FRANCES H. QUIMBY, ADMINISTRATRIX, &c., OF ISAAC N. QUIMBY, DECEASED, PLAINTIFF IN ERROR, v. .IRA S. FILTER AND WIFE, DEFENDANTS IN ERROR.

Submitted December 5, 1898—Decided March 6, 1899.

One passing along the sidewalk of a public street must use such care and circumspection as the circumstances require, and it is error to instruct a jury that ordinary care to avoid danger need only be used if the danger is known or seen.

On error to Hudson Circuit.

For the plaintiff in error, *Charles C. Black.*

For the defendant in error, *William H. Speer, Jr.*

The opinion of the court was delivered by

COLLINS, J. The judgment removed in this cause was recovered, on verdict, by Ira S. Filter and wife for injuries sustained by Mrs. Filter through falling into an opening in the sidewalk of a public street in Jersey City, from which opening a flight of steps led to the cellar of a building owned, at the time of the accident, by Dr. Isaac N. Quimby, the defendant's intestate, who died during the trial of the action brought against him.

The errors assigned are based on exceptions taken at the trial. Those needing consideration challenge the submission of the case to the jury and the ruling of the judge on the subject of contributory negligence.

It is not disputed that if an opening in a public street is not properly guarded it is a nuisance; nor that, if such nuisance inhere in the permanent structure of a building, responsibility for its maintenance rests on the owner. It is urged in this case that in the construction of the building the cellar stairway was properly guarded; that its guards became impaired through the default of a tenant, in exclusive posses-

sion of the building, and bound to make repairs, and that therefore the tenant only was liable. The proof showed, however, that at the time of the last renewal of the demise the condition of the property was the same as at the time of the accident. It is settled in this state that by a renewal of lease the owner of demised premises may come under responsibility for the continuance of a nuisance although there is no actual change of possession and the tenant is bound to make repairs. Responsibility is undeniable if the owner at the time of the renewal has knowledge of the condition that constitutes the nuisance. *Ingwersen* v. *Rankin*, 18 *Vroom* 18 ; approved, *Rankin* v. *Ingwersen*, 20 *Id.* 481. Whether such knowledge is essential to responsibility need not be considered, for that question was not raised at the trial and there was proof sufficient to warrant a jury's inferring it. The defect proved had existed a considerable time before the renewal of the lease, and was open and visible in a public street. Dr. Quimby lived in Jersey City and was familiar with the property. He testified at the trial and did not disclaim knowledge of its condition.

Nor upon the question of whether the accident was due to lack of proper safeguards could the court take the case from the jury. The opening of the cellar steps was originally guarded on the sides by iron railings, one of which had been broken away. Which railing was gone was a matter of dispute, as was also the position of certain merchandise of the tenant placed along the building which was supposed to effectually guard the side of the opening from which the railing was missing. The evidence that the opening was unguarded on the side towards which Mrs. Filter approached it was very slight, but sufficient to go to the jury. The sidewalk was fourteen feet wide and the cellar steps descended, transversely thereto, from an opening about four feet square adjoining the side of the building. The street ran north and south. Mrs. Filter with a Mrs. Tietjen and her young daughter were passing along the sidewalk, coming from the north. It was after nightfall, but the street was well lighted. In some way or

other Mrs. Filter was precipitated to the foot of the cellar steps and received bodily injury. The only witnesses to the accident called for the plaintiffs were Mrs. Filter and Mrs. Tietjen. Mrs. Filter said that she did not know how she came to fall nor from what point she fell; but in a confused and uncertain way she testified that it was the north guard-rail that was gone and that she was close to the building when she fell. Mrs. Tietjen testified that the first knowledge she had of the accident was that Mrs. Filter had disappeared, and that she then saw her down at the foot of the steps. She differed from Mrs. Filter as to which guard-rail was gone. A number of witnesses to the accident were called for the defendant. They testified that as Mrs. Filter's party walked along they were laughing and "fooling" and pushing one another, and that Mrs. Filter fell or was pushed down the steps from the front. Most of defendant's witnesses testified that the north guard-rail was intact, and that it was the south rail that was gone. In rebuttal the conduct ascribed to Mrs. Filter's party was denied by each of them.

On this state of proof it was not error to refuse to with-draw the case from the jury, but on the subject of contributory negligence there was such misdirection as must avoid the verdict and consequent judgment. The judge instructed the jury that Mrs. Filter was not bound to use ordinary care as she passed along the sidewalk, unless there was some means of warning or the "pitfall" was guarded. This instruction was afterwards modified as follows: To a request to charge that if Mrs. Filter knew of the existence of the dangerous place, or if it was open and obvious to the sight, she was bound to use reasonable care to avoid the danger, the judge responded by saying that if she *saw* the dangerous place she would be bound to use ordinary care to avoid the danger. He broadened this ruling by charging a request that if she *knew or saw* the dangerous place she would be guilty of contributory negligence in not avoiding it, but in response to a request to charge that she was guilty of contributory negligence if she did not see the "cellarway," provided she would

have seen it by exercising ordinary care, and, seeing it, was guilty of contributory negligence in not avoiding it, provided she could have avoided it by exercising ordinary care, he said : " I refuse to charge the above as repetition ; of course, if she saw the hole it was her duty to avoid it." The effect of these instructions was to emasculate the defence of contributory negligence. Ordinary care is everyone's duty. I can hardly conceive of a case where no care at all need be exercised. What is ordinary care will depend upon the circumstances and is for a jury's determination. The adjudged cases all recognize the necessity for the use of ordinary care while walking on the sidewalk of a public street if recovery is to be had for injury due to the maintenance of a nuisance, and recognize also that failure to exercise such care may defeat a recovery, although the existence of the nuisance and its attendant danger may be unknown to the pedestrian. In the leading case of *Durant* v. *Palmer*, 5 *Dutcher* 544, it was held in this court that it was not necessarily negligent for a plaintiff who fell into an unguarded areaway to have walked toward a show-window without observing the condition of the sidewalk; but it was also held that the question of his negligence in so doing was for the jury. In *Temperance Hall Association* v. *Giles*, 4 *Vroom* 260, it was assumed that it was a proper question for the jury whether a plaintiff who fell into an unguarded and unlighted areaway by night, had exercised that degree of care which was in her power and which might reasonably be expected from a person in her situation, under the circumstances in which she was placed. A like assumption underlies the decision in *Houston* v. *Traphagen*, 18 *Id.* 23, where it was held proper to leave to the jury the question of the negligence of a lad who, in the daytime, attracted by the contents of a druggist's window, failed to notice, and stepped into, an unguarded opening in the sidewalk. It was said that whether or not such conduct was negligent depended on circumstances. In all such cases, of course, the burden of proof that negligence of the person injured contributed to the injury is on the defendant; but the

question of such negligence, if raised, must be determined, and that question is always for the jury if in any aspect of the case such negligence may be fairly inferred. Of course the degree of care exacted by the law from one walking on that part of the sidewalk of a public street devoted wholly to pedestrians is much less than that required on other parts of the highway and the degree of care differs also with respect to the character of the use by others of the sidewalk—whether lawful or unlawful. These differences are well illustrated by Mr. Justice Depue in the opinion read in the case of *New Jersey Express Co.* v. *Nichols,* 4 *Id.* 434, decided in this court. But *ordinary* care is exacted, and, except in a perfectly clear case, the court should always leave it to the jury to inquire whether there was such circumspection as under the circumstances an ordinarily careful man would exercise.

It is common knowledge that adjacent to the buildings on a city street there are various appendages for their convenient use that project into the sidewalk. It might well be that Mrs. Filter, with due circumspection measured by the standard of ordinary care, would have avoided the accident that befell her, although she did not previously see or know exactly the danger of such an accident. It was error to limit the jury in their inquiry on that subject.

I shall vote for a reversal and a *venire de novo.*

*For affirmance*—LIPPINCOTT, LUDLOW, ADAMS.    3.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, VAN SYCKEL, DIXON, GARRISON, GUMMERE, COLLINS, BOGERT, NIXON, HENDRICKSON, VREDENBURGH.    12.